Filed 3/11/22  Wagner v. Messana CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| DEBORAH WAGNER,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>RUSSELL C. MESSANA et al.,<br><br>        Defendants and Appellants. | A159310<br><br>(Sonoma County<br>Super. Ct. No. SCV-260727) |

Three trusts own a plot of land in Santa Rosa as tenants in common, each owning a one-third, undivided interest.  Respondent Deborah Wagner, a trustee of one of the trusts, brought this action to partition the property.  Appellants are the beneficiaries of the other two trusts.  On appeal, they challenge two trial court rulings.  The first entered an interlocutory judgment of partition and the second ordered the partition to be by sale.  We reject appellants' arguments about the judgment of partition because they failed timely to appeal from it, and we conclude that the trial court properly exercised its discretion in ordering the partition be by sale.  Accordingly, we affirm.

1

# I.
## FACTUAL AND PROCEDURAL BACKGROUND

The property that is the subject of this dispute ("the property") is a 9.37-acre lot on Santa Rosa Avenue. The property is long and rectangular, with the narrow part of the parcel fronting Santa Rosa Avenue. It is made up of two parcels: The front (the side fronting Santa Rosa Avenue) is 4.69 acres and zoned for limited industrial use, and the rear is 4.68 acres and zoned rural residential. The property is the site of a boat-and-storage business (TJ RV & Boat Storage, hereafter "TJRV" or "the business"). As of May 2019, TJRV was "successful and generate[d] substantial income for the owners." The business does not pay rent.

The background of the current dispute began in 1999 when Theresa Messana Louvar created the Theresa Messana Louvar Trust (Trust). The Trust included the property and the business. The beneficiaries were Theresa Messana Louvar's three children: Charles Joseph Messana (Jody, who is not a party to this appeal) and appellants Russell Messana and Christine (Chris) Merkel.[1]

In May 2000 Theresa Messana Louvar executed an amendment to the Trust that established a "Separate Share Trust" for Jody. That separate trust provides that the trustee shall pay Jody $1,000 per month, with discretion to provide additional support. The separate trust shall terminate on Jody's death, with any remaining trust property to be distributed to Jody's

---

[1] In the interest of clarity, we refer to appellants by their first names. Chris died during the pendency of this appeal. At appellants' request, the court substituted Chris's daughter (Amber Dee Merkel) and Russell as appellants in Chris's place.

2

living issue or to his siblings if he dies with no issue. Russell was appointed as trustee. Theresa Messana Louvar died in May 2012.

Following a court trial in a separate action, Russell was removed as trustee of Jody's Separate Share Trust, and in March 2016 respondent Wagner, a private professional fiduciary, was appointed trustee. TJRV was conveyed out of the Trust in November 2016, and the property (the land where TJRV is located) was granted as three one-third undivided interest as tenants in common to three trusts: a trust held by Russell and his wife, appellant Martha Messana; the Separate Share Trust; and a living trust held by Chris. An order in that separate case specifically states that the property would be transferred "each as to a one-third undivided interest as tenants in common." A grant deed was then filed granting the property to the three trusts, "each as to a one-third, undivided interest, as tenants in common." The Separate Share Trust incurred legal expenses from this previous action.

This brings us to the current dispute. According to trustee Wagner, "the owners of the property don't really get along that well," and Russell likewise characterizes his relationship with Jody as "[v]ery, very strained." Wagner initiated these current proceedings in May 2017 when she filed a complaint seeking to partition the property in order to meet distribution and expense requirements of the Separate Share Trust, as most of the funds received from the business were used to pay Jody's legal fees. Russell, Martha, and Chris opposed partition.

The parties first litigated the nature of their interests in the trust's assets. Wagner contended that the parties owned their interests in the property as tenants in common, meaning each was entitled to partition as a matter of right, whereas appellants maintained that Jody held a life estate. Following an evidentiary hearing in March 2018, the trial court concluded

3

that Wagner, as trustee of the Separate Share Trust, held a one-third undivided interest in the property, and that the action thus was appropriate for partition and could proceed under Code of Civil Procedure section 872.710, subdivision (b),[2] which permits partition of concurrent interests in property as a matter of right.

Following a recess after the trial court's ruling, Wagner's counsel represented that the parties might be able to settle their dispute. The parties agreed to continue trial until May in order to work on the possible settlement, then agreed to another continuance until August in order to obtain "certain additional valuation evidence." Despite a further continuance, efforts to settle were ultimately unsuccessful.

In further briefing following the continuances, Wagner asked the trial court to enter an interlocutory judgment determining the interests of the parties and ordering the partition of the property under section 872.720, subdivision (a). She further argued that under the statute the trial court had the discretion to partition the property without further delay and should immediately order that the property be sold. Wagner thus provided two proposed orders: one that determined the rights of the parties and appointed a referee to recommend the manner of partition, and one that appointed a referee to immediately sell the property.

The trial court opted for the order that appointed a referee to recommend the manner of partition and, in February 2019, entered an "Interlocutory Judgment of Partition." Appellants could have appealed from the interlocutory judgment, but they did not. (§ 904.1, subd. (a)(9) [appeal may be taken "[f]rom an interlocutory judgment in an action for partition determining the rights and interests of the respective parties and directing

_____

[2] All statutory references are to the Code of Civil Procedure.

4

partition to be made"]; see *Richmond v. Dofflemyer* (1980) 105 Cal.App.3d 745, 753.)

The referee submitted a report in May 2019. According to the report, an appraisal of the land only (excluding the business) assigned a value of $1,580,000. Wagner later testified that the appraisal figure was "old" and she was not "not sure even where [the referee] got that." Apparently there was a subsequent appraisal of the property, though it is unclear the amount, but the appraisals apparently "vary a great deal."

The referee's report stated that a three-way division of the property would require the owners to apply for a "minor subdivision." According to the referee, "The suggested division would create three equal size parcels divided width wise. While the front parcel would have direct access to Santa Rosa Avenue the two rear parcels would require a 25-foot wide easement to that public road. In addition, in the event of a subdivision, the portion of the property currently zoned Rural Residential may lose the status as special purpose industrial legal non-conforming use and in that event may no longer be used as storage for recreational vehicles and boats." As for a recommendation on how to partition the property, the referee acknowledged downsides to each method. Dividing the property in kind might mean "reducing the utility of the property far below its current use." But selling the property to a third party "would eliminate the ability for the parties to operate and earn income from the business," meaning a "forced sale" would be "a harsh remedy." The referee did not, however, recommend one method of partition over another and instead proposed a method for having appellants buy trustee Wagner's share.

Following the issuance of the report, appellants' counsel stated they preferred that Wagner's share of the property be sold to them based on the

5

$1,580,000 appraisal, but then later argued that the land should be partitioned in kind. Trustee Wagner objected that the referee's recommendation was "useless" because a court cannot order partition by appraisal unless all parties agree. (§§ 873.910 [parties "may agree" to partition by appraisal], 873.920 ["agreement shall be in writing filed with the clerk of the court"].) The trustee asked the trial court to "proceed under its own authority, and in the exercise of its discretion."

Trial resumed in August 2019 on the issue of whether the property should be partitioned by sale or in kind. Wagner testified about the practical difficulties of dividing the property, such as having to create an access road from the front of the property (fronting Santa Rosa Avenue) to the back and ensuring that the easement complied with fire regulations. She also was not sure whether county officials would approve a subdivision of the property. A planner with Sonoma County testified about the process to subdivide property in general and the considerations that would go into dividing the property at issue in the case specifically. Wagner further testified that dividing the property in kind would reduce the value of the property and "would also put in the situation where these feuding family members would be in the same situation they had been in [for] years."

Russell was called as an adverse witness for Wagner. When asked if he wanted to subdivide the property, Russell testified, "Where did you hear that? No." When asked again whether he would be in favor of dividing the property instead of dividing it by sale, Russell testified, "Not at all. I am not in favor of any kind of division whatsoever. The sum of the parts is greater than the individual pieces the way it is."

At the close of evidence, Wagner's counsel asked that the property be partitioned by sale, whereas appellants' counsel argued that there should be

6

partition in kind. After post-trial briefing, the trial court concluded that partition by sale was more equitable than partition in kind and ordered that the property be partitioned for sale. The court directed that the property be listed for sale as soon as possible and provided a procedure for selecting a broker to handle the sale.

## II.
### DISCUSSION

### A. *Appellants Forfeited Several Arguments by Failing to Appeal from the Interlocutory Judgment of Partition.*

Appellants devote much of their opening brief to arguing that the trial court erred when it issued its interlocutory judgment of partition, from which they did not appeal. We agree with Wagner that by failing to appeal the interlocutory judgment, appellants waived these arguments.

"An interlocutory decree in an action for the partition of real property . . . is *conclusive as to the matters determined therein* [citation]; that is, it is final upon the questions adjudicated in it and is to all intents and purposes a final judgment from which an appeal may be taken [citation], although it is not the last judgment entered in the action." (*Pista v. Resetar* (1928) 205 Cal. 197, 199, italics added.)

Appellants claim that the interlocutory judgment was not appealable because it "did not order that partition be made," but that is not a reasonable interpretation. The order was titled "Judgment of *Partition*" (italics added) and stated that each party was entitled to partition as a matter of right and that a referee was appointed to submit a report regarding the *manner of partition*. The order further listed the authority granted to the referee to enable "the orderly process of determining the *means of partition*," and the court retained jurisdiction so that it could issue further orders "for the *sale or division* of the Property." (Italics added.) Apparently appellants contend

7

that the order lacked specific language directing partition, but it is clear from the entire order that it was directing that the property be partitioned and that the only issue to decide was the manner of partition.

The fact that Wagner submitted two different proposed versions of the interlocutory judgment supports our conclusion. Again, Wagner urged in briefing after the hearing on the nature of the parties' ownership interests that the trial court immediately order the sale of the property (§ 872.720, subd. (a)). But she also provided an alternate proposed order in case the court opted to first appoint a referee to provide a recommendation, which is the approach the trial court ultimately took. Appellants now claim that the order "did not order partition of the Property" because the court signed the version that did not order the property to be partitioned in a particular manner. But the fact is that both proposed orders contemplated partition.

Appellants contended, both in their briefing and at oral argument, that "[t]he central issue in this case" is whether trustee Wagner could force partition without a determination of whether partition was in the best interests of all parties under section 872.710, subdivision (c). That statute provides that partition *as to successive estates* shall be allowed if it is in all parties' best interest. The interlocutory judgment determined, by contrast, that the parties held the property as tenants in common and thus were entitled to partition as a matter of right. Because appellants did not appeal from that interlocutory judgment and it has long since become final, we need not address their arguments related to that order, such as that Wagner was not, in fact, entitled to partition as of right; or that the trial court misapplied the doctrine of law of the case to determine the parties' ownership interests.

*B. Appellants Identify No Reversible Error in the Trial Court's Decision to Partition the Property by Sale.*

Appellants also argue that the trial court abused its discretion when it ordered partition by sale instead of in kind, an issue they did preserve by appealing from the final judgment. The argument is not persuasive.

The law is straightforward. If the trial court finds that a plaintiff is entitled to partition, it may select partition " 'in kind'—i.e. physical division of the property [citation]—according to the parties' interests as determined in the interlocutory judgment. (§ 872.810; see § 873.210 et seq.) Alternatively, if the parties agree or the court concludes it 'would be more equitable,' the court may order the property sold and the proceeds divided among the parties. (§ 872.820; see § 873.510 et seq.)" (*Cummings v. Dessel* (2017) 13 Cal.App.5th 589, 597.) "Partition in kind is favored in law and in the absence of proof to the contrary the presumption in favor of in kind division will prevail. [Citation.] A forced sale is strongly disfavored." (*Butte Creek Island Ranch v. Crim* (1982) 136 Cal.App.3d 360, 366 (*Butte Creek*).) The burden of proof is on the party trying to force a sale. (*Id.* at p. 366.) But " '[in] many modern transactions, sale of the property is preferable to physical division since the value of the divided parcels frequently will not equal the value of the whole parcel before division. Moreover, physical division may be impossible due to zoning restrictions or may be highly impractical, particularly in the case of urban property." (*Id.* at p. 365.) There are generally two types of evidence that are sufficient to justify a partition by sale: evidence that the property is situated in such a way that division into subparcels of equal value "cannot be made" (*id.* at p. 366), or evidence that "division of the land would substantially diminish the value of each party's interest." (*Id.* at p. 367.) "[A] partition suit is in equity" and "[a] court of

9

equity has broad powers and comparatively unlimited discretion to do equity." (*Richmond v. Dofflemyer*, *supra*, 105 Cal.App.3d at p. 766.)

Appellants contend that Wagner "failed to produce evidence that the Property cannot be partitioned in kind." While it may be true that Wagner did not establish that it would be literally impossible to physically divide the property, she provided evidence both that dividing the property into subparcels of equal value would be infeasible and that division of the property would substantially diminish the value of each party's interest. (*Butte Creek*, *supra*, 136 Cal.App.3d at pp. 366–367.) And as we have mentioned, Russell himself testified that "[t]he sum of the [property's] parts is greater than the individual pieces the way it is."

The trial court in its statement of decision specifically found that partition by sale was "more equitable" than partition in kind. (See § 872.820, subd. (b) [court shall order partition by sale if it determines that under the circumstances sale and division of proceeds would be more equitable than division of property].) The court took into consideration the testimony that any division of the property could cause the property to lose its industrial zoning given the need for more housing, the fact it appeared unlikely the property could be divided in such a way as to preserve the business that appeared to be the "highest and best use of the property," and uncertainty over where access roads would be placed to reach the back portion of the property were it to be divided.

On appeal, appellants quibble with the foregoing statements but fail to persuade us that, on balance, partition by sale was not more equitable under the circumstances. They claim, for example, that "no evidence was produced that the property could only be rezoned for the purposes of providing housing," and that "no witness whatsoever" testified that "dividing the

Property could cause the loss of its current industrial zoning given the need for housing in Sonoma County and Santa Rosa." But no one has characterized the planning process in such extreme terms. Wagner testified that a county planner had told her that there were various restrictions on subdividing properties, that he could not tell her whether a particular property could be subdivided absent an application with a specific plan for the property, and that "if the plan for subdivision were related to affordable housing, that . . . would more likely be approved." The county planner did not specifically testify about affordable housing, but he did indicate that planners would consider whether a proposal provided a public benefit (though a finding of public benefit was not required for a subdivision). The planner further testified that the dual zoning on the property would be taken into consideration when evaluating any subdivision plan. This and other testimony established that given the current zoning of the property, any subdivision would be complicated, and planners would consider several factors in whether any particular plan would be approved.

Appellants also fault the trial court for focusing on whether subdividing the property would require the addition of an access road. They claim that Wagner did not meet her burden to show an access road with specific dimensions would be required, and that the county planner "could <u>not</u> testify about specifically what would be required absent a proposal . . . and the requirement for and width of an access road would depend upon comments received from surveying engineering and the fire department." While it is true that the planner could not specify the dimensions of any potential access road, he testified that "[a]ccess to any part of the property is required in general," some form of access would be required to any second parcel that was created, and the county "would not create a land lot [*sic*, presumably

11

'locked'] parcel." This testimony again supports the trial court's stated concern with the feasibility of physically dividing the property.

Finally, appellants downplay the significance of Russell's testimony that he did not want the property physically subdivided because the entire property was worth more than individual pieces. They claim this was an "off-handed paraphrase of a quote commonly attributed to Aristotle" and was insufficient to meet the burden to support a forced sale under *Butte Creek*. *Butte Creek* observed that the test to show that property is situated in such a way that division into subparcels of equal value cannot be made "is not met by evidence that a portion of the property is not equal to the whole, for that is always the case in a partition action." (*Butte Creek*, *supra*, 136 Cal.App.3d at p. 366.) The test is met where the party desiring partition by sale shows that the land cannot be divided equally (*ibid.*), which was done here.

It is beyond dispute that the parties do not get along, and that this has been the case for years. It is unclear why appellants continue to advocate for physically dividing the property, which would almost certainly lead to further conflict. As the trial court observed, "The obvious solution here is for one side to buy out the other's interest in the subject property and apparently profitable business. However, when dealing with two sides who could not agree on whether the weather forecast was 'partly cloudy' or 'partly sunny' it falls to the Court to try and prevent all parties from shooting themselves in the foot." On this record, the trial court did not abuse its discretion in concluding that dividing the property by sale would be more equitable.

# III.
## DISPOSITION

Appellants' March 9, 2021 request for judicial notice of a complaint Wagner filed against Russell, Chris, and TJRV in December 2020 is denied.

The judgment is affirmed. Trustee Wagner shall recover her costs on appeal.

 

_____

Humes, P.J.

WE CONCUR:

_____

Banke, J.

_____

East, J.*

\*Judge of the Superior Court of the City and County of San Francisco, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

*Wagner v. Messana et al.* A159310